(C. D. 860)

NATIONAL MERCHANDISE CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 28, 1944)

*Lawrence & Tuttle* (*George R. Tuttle, Charles F. Lawrence,* and *Frank L. Lawrence* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*William J. Vitale* and *Richard H. Welsh,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: This case is before us on rehearing granted at the request of importer's counsel and on his assertion that some facts that constituted evidence had been brought to his attention after the original decision had been handed down. Said original decision was reported as *National Merchandise Co.* v. *United States,* 9 Cust. Ct. 147, C. D. 678. We there dismissed the protest as untimely, the reasons therefor being set forth in the syllabus in the following language:

A protest filed more than 8 months subsequent to liquidation, requesting that an error, which is conceded by the defendant to be a clerical error, be corrected, held untimely, on the ground that the pleadings contain no claim against the refusal of the collector to reliquidate for a clerical error discovered within the time provided in the statute.

In our decision we set forth the protest which is in the form of a letter addressed to the collector of customs at the port of Los Angeles: "Attention: Liquidator," the last two words being underscored, said letter being on the letterhead of "Universal Foreign Service Co.," and signed in the same name, requesting correction of an error in the liquidation "under section 520–C as amended by the Customs Administrative Act of 1938, under Tariff Act of 1930." There is no

allegation in these pleadings that the collector had refused to reliquidate the entry for a clerical error therein, which obviously is the factual basis for a protest against such refusal, nor was the collector's attention directed in any way to the statutory provision covering such incidents. On the contrary his attention was drawn away from it by the citation of section 520. In *Jenkins Bros.'v. United States*, 73 Treas. Dec. 524, T. D. 49480 (adhered to on rehearing, Abstract 41875), we held that a protest which sets forth distinctly, specifically, and with great particularity the reason for a claim that the liquidation is void cannot be held sufficient to include a claim that said liquidation is void for another and entirely different reason, not set forth in the pleadings. This ruling was in harmony with the principle enunciated in the case of *Bliven* v. *United States*, 1 Ct. Cust. Appls. 205, T. D. 31239, and followed in *United States* v. *Danker & Marston*, 2 Ct. Cust. Appls. 462, T. D. 32208, and *Oelrichs & Co.* v. *United States*, 3 Ct. Cust. Appls. 232, T. D. 32541.

We have given long and careful consideration to this case and particularly have we read carefully and diligently all of the testimony presented, both at the original hearing and on rehearing, together with the briefs and memoranda submitted. We may say that this discloses a most unusual state of the record presenting several different features.

The first of these to which we will refer is a typewritten document on brown paper, a printed protest form of counsel for the plaintiff, the printed portion of which includes the words "your refusal to reliquidate for clerical error," the addressee being the collector at Los Angeles. Although the case was tried at Los Angeles February 21, 1941, was briefed by both sides, and was decided September 2, 1942, from which decision the motion for rehearing was filed, dated September 28, 1942, and a supporting memorandum filed by plaintiff's counsel, this document was not once referred to during all that time. The first mention of it is made in a "supplemental Memorandum in Support of Motion for Rehearing," filed in this court October 23, 1942, and dated at San Francisco 2 days earlier. In this memorandum we find the following

\* \* \* \* \* \* \*

(2) During the month of July 1940, the collector advised a representative of Universal Foreign Service Co. that the request for reliquidation under authority of section 520 contained in the letter referred to above, had been denied by the Commissioner of Customs.

(3) Within a short time thereafter a protest typed upon the printed form of Lawrence & Tuttle was filed with the collector and this protest, together with the letter written by the Universal Foreign Service Co., was then forwarded to the clerk of this court by the collector.

\* \* \* \* \* \* \*

In connection with the assertion contained in (2) above quoted, we observe that the learned counsel said in his first memorandum in support of his motion for rehearing:

If the collector considered that a clerical error existed and had been discovered within the time enumerated in section 520, he could have forwarded the importer's letter directly to the Secretary for action. *However, he chose to send it to the Customs Court instead.* [Italics supplied.]

We have no way of determining which of these statements is correct, for there is no report from the collector, not even a letter of transmittal such as is required by article 854 of the Customs Regulations of 1937. The plaintiff's witness Sellers (who described himself as the sole owner of the Universal Foreign Service Co.) identified the letter on white paper as the one he directed sent to the collector. This letter bears the stamp as received at the customhouse at Los Angeles on July 28, 1939, and it is also stamped in red with the number 32930, the collector's protest number. We quote from this witness' testimony on rehearing as follows (pp. 7/10):

Q. I will ask you to look at the file, Mr. Sellers, and I draw your attention to a letter written by the Universal Foreign Service Co. which has the number stamped in the upper right-hand corner, 32930, and I will also draw your attention to a document on brown paper which is attached to that letter. After you have examined them will you please tell the court what you know of the filing of either, or both, of those documents with the collector of customs in Los Angeles?—A. (Examines indicated documents.) When the matter was drawn to my attention of the big discrepancy in the number of pieces between the invoice and the liquidation of the entry, I instructed Kay Sugahara to file this original letter.

Q. Identify it, please.—A. It is a letter addressed to the collector of customs, under date of July 25, 1939.

Q. Is it stamped with a number?—A. No, there is no number on the letter except the protest number itself.

Q. That is what I mean.—A. 32930.

Q. Will you continue, please?—A. In this letter they drew the attention of the collector to the discrepancy in the number of pieces as liquidated and the number of pieces on the entry, or on the invoice, and also as received by the importer, and they requested the correction of the error under section 520–C.

Q. Do you know when that letter was filed?—A. The letter was filed July 26, 1939.

Q. Filed with whom?—A. The United States customhouse at Los Angeles.

Q. And that appears on the document?—A. That stamp appears on the document.

Q. Now, will you turn to the brown colored piece of paper, the protest form, printed form with Lawrence & Tuttle's name on it, and tell me what, if anything you know of the filing of that document?—A. The matter was again drawn to my attention that the Commissioner of Customs had rejected our application for correction.

Q. Correction of what?—A. Correction of the liquidation on account of the error in assessing on 6,300 dozen instead of 630 dozen. I took the matter up with Mr. Jack Townsend, along with Mr. Bonheim of the office of Lawrence & Tuttle. Mr. Jack Townsend was head liquidator of the local customhouse, and Mr. B. B. Bonheim was the representative of Lawrence & Tuttle in Los Angeles. We requested that this letter, which was originally filed on July 26, 1939, be treated as a

protest against the collector's action in refusing to reliquidate on account of a clerical error discovered within 1 year after date of entry. This was done, and at the same time Mr. Bonheim made arrangements to have the same form of protest filed on Lawrence & Tuttle's own form, which is the form attached referred to, the brown form.

Q. Let me see if we understand you. The letter of July 25 was filed on or about that date, in the year 1939, is that right?—A. It was filed July 26, 1939.

Q. Then, at a subsequent time, which I do not believe has been identified as yet, is it your statement that the brown piece of paper signed by Mr. Bonheim was filed with the collector?—A. It was filed with the collector. Mr. Bonheim can answer that.

Q. Yes, I just want your knowledge.—A. It was to be filed with the collector when it was taken up with Mr. Townsend, the original letter was.

Q. All right. Now, then, in addition you said something about reinstatement. To what were you referring then?—A. It is your own protest.

Q. No, in your testimony, Mr. Sellers, you said a moment ago—A. The letter was reinstated as a protest.

Q. And by that you were referring to the letter which is stamped with the number 32930?—A. That is right.

Q. I just want to get those documents straight, that is all.—A. That is right.

Q. Now, have you any independent recollection of the date, or the approximate date when these second series of events occurred; that is, I am talking now of the filing of the document signed by Mr. Bonheim and the so-called reinstatement of the first letter?—A. Yes, that would be July 15, 1940.

The testimony closed with a promise by this witness to bring his complete file later, after which there occurred:

Mr. TUTTLE. That is all of this witness now.
Mr. VITALE. No questions.

Mr. Bert B. Bonheim, described as Los Angeles manager for the firm of Lawrence & Tuttle, testified as follows, in answer to questions by Mr. Tuttle:

Q. Now, will you tell us, please, what your recollection is, if you have any, in respect to the filing of a document that I will now draw your attention to; it is a brown piece of paper attached to the letter and is now before you?—A. (Examines document referred to.) Sometime during the early part of July 1940. Mr. Sellers asked me to go to the customhouse and see Mr. Townsend. He said that he understood that Mr. Townsend, as chief liquidator and deputy collector, had, in answer to his letter to the Bureau concerning this matter been instructed to refuse reliquidation—I mean to refuse relief. I, thereupon, even though there was what purported to be a protest on file——

Q. Let me interrupt. What are you talking about, something purporting to be a——A. Letter of Universal Foreign Service Co., under date of July 28, numbered in red ink 32930.

Q. Is that July 28? Will you read it again?—A. I said July 28.

Q. Yes.—A. That is what it says.

Q. Excuse me for interrupting, I wanted to identify the document you are speaking of.—A. 1939 that is. That is what I said, purported to be a protest. However, I thought it best to file our protest against the action of the collection on our regular form, which I did.

Q. And is the document before you the one that you are referring to as our protest?—A. It is.

Q. Would you identify it, please?—A. Up in the right-hand corner it has the number 32930.

Q. How does it appear, in pen and ink or typewriter?—A. Type.

Mr. VITALE. Is that the protest in the jacket?

Mr. TUTTLE. Yes.

A. And is signed "National Merchandise Co., Universal Foreign Service Co., signed by Kay Sugahara, Lawrence & Tuttle, Attorneys, 500 Sansome Street, San Francisco," and B. B. Bonheim, my own signature. This protest was filed at the customs—

Mr. VITALE. I think it will speak for itself. A.—July 15th.

Mr. TUTTLE. It does not; no, it is not stamped. The letter is stamped but not the other one.

The WITNESS. Filed July 15, 1940; I remember very distinctly.

Mr. TUTTLE. That is all, thank you.

Mr. VITALE. No questions (R. 11/13).

Counsel for the plaintiff then called Mr. John C. Townsend, deputy collector in charge of the liquidating division, Los Angeles customhouse, whose pertinent testimony is as follows, the questions being asked by Mr. Tuttle:

Q. Do you know, Mr. Townsend, the approximate date when the number 32930 was placed on the document before you, which is a letter from the Universal Foreign Service Co.? Do you want a file?—A. Yes. (A file was handed the witness.)

Q. Do you know that date, Mr. Townsend, or the approximate date?—A. May I have the question?

(The previous question was read by the reporter)—A. Yes.

By Mr. TUTTLE.

Q. Will you tell us what that approximate date, or the actual date was?—A. The approximate date was between July 8, 1940, and July 12, 1940.

Q. How do you know that to be so?—A. Our protest record book shows that this number was inserted in between those two dates.

Q. That is, the protest immediately previous to 32930 was July 8th and the one immediately after it was July 12th?—A. That is correct.

Q. I will ask you to examine the letter which is No. 32930. When was that received, or when was it first received by your office?—A. It was received July 26, 1939.

Q. If you had poor glasses could that look like July 28th?—A. It could be either if your sight was not very good.

Q. And, is there any date stamp showing the receipt of the document attached to the letter?—A. No.

Q. Can you state the date both documents were received by the clerk of the Customs Court, please? It will show on there.—A. The stamp placed on this by J. W. Dale, clerk of the United States Customs Court shows September 17, 1940.

Q. Do you know if they were both forwarded together by your office?—A. I have no knowledge of that.

Mr. TUTTLE. Thank you, Mr. Townsend.

Mr. VITALE. No questions.

There was also some testimony from Mr. Wiley, a clerk in the employ of the customs brokers who filed the entry, but the effect of it was to further confuse an already confused situation.

The brown document, partly printed and partly typewritten, referred to by the witnesses Seller, Bonheim, and Townsend, which contains a claim vital to the importer's case, viz, refusal to reliquidate on the ground of clerical error, which claim was not present in the protest before the court, bears no marking to indicate that it ever passed through the office of the collector at Los Angeles, and deputy collector Townsend, when asked by Mr. Tuttle if they (the brown paper and the white paper) were forwarded together by his office, answered that he had no knowledge of that. The said brown document bears no date. In the case of *Standard Oil Co.* v. *United States*, 1 Cust. Ct. 78, C. D. 22, a protest not dated by the protesting importer, and bearing no filing date of the collector's office, was dismissed as a nullity. However, plaintiff has produced positive testimony that the brown document containing the claim against the collector's refusal to reliquidate for a clerical error, was filed "at the customs" on July 15, 1940. This testimony was not contradicted and therefore remains the only positive testimony on this point.

It is not clear from the record on what date the collector refused to reliquidate the entry on the ground of a clerical error, but the testimony produced on the part of the plaintiff disclosed that such refusal occurred sometime between June 22 and July 12, 1940. Therefore a protest against such refusal filed on July 15, 1940, was timely.

At the first hearing of this case counsel agreed that there were in fact 630 dozen pieces contained in cases 7044–7048 covered by W. H. entry 238, and that "a clerical error occurred in the assessing of duty on the merchandise that has been referred to, contained in cases 7044 to 7078, in that the liquidator did not follow the invoice as it was returned, and as the merchandise was described by the examiner."

We therefore find that plaintiff's claim should be and the same is hereby sustained, as to that entry.

Judgment will be rendered accordingly.